FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HENRY V., | No. 2:17-cv-00085-FVS |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 13, 14 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney Dana C. Madsen. Defendant was represented by Special Assistant United States Attorney Danielle R. Mroczek. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 13, is denied and Defendant's Motion, ECF No. 14, is granted.

**JURISDICTION**

Plaintiff Henry V. ("Plaintiff") filed for disability insurance benefits ("DIB") and for supplemental security income ("SSI") on April 10, 2013. Tr. 164-68, 88. Plaintiff alleged an onset date of October 31, 2012. Tr. 164-68. Benefits were denied initially, Tr. 119-22, and upon reconsideration, Tr. 126-29. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 19, 2015. Tr. 22-50. On September 11, 2015, the ALJ denied Plaintiff's claim (Tr. 102-14), and on January 13, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 29 years old at the time of the hearing. Tr. 28. He has a high school diploma. Tr. 29. He last worked as a janitor and has prior work experience as a surveyor, cashier, farmhand, painter and sandblaster, and doing road maintenance. Tr. 29-30. In October 2012, he fell on the back steps of his house while drinking alcohol and injured his left eye. Tr. 30-31. In November 2012, the eye was removed and the eye socket was repaired. Tr. 281. In January 2013, he had a second surgery for repair and reconstruction. Tr. 288.

Plaintiff testified he still has pain all the way around the eye socket.  Tr. 32.

He said he cannot concentrate due to the pain.  Tr. 33.  He has issues with depth

perception.  Tr. 34.  He sometimes has to rest his right eye.  Tr. 35.  He developed

anxiety in unfamiliar places after he lost his eye.  Tr. 36.  He has one or two panic

attacks per week when he leaves the house.  Tr. 36-37.  He is depressed because he

cannot work and because of his pain.  Tr. 42.  He does not go to counseling

because he has not felt he needed it.  Tr. 42.  Plaintiff testified the main reasons he

cannot go back to work are pain in his eye socket and his medication.  Tr. 42.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11   *Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

13   A claimant must satisfy two conditions to be considered "disabled" within

14   the meaning of the Social Security Act.  First, the claimant must be "unable to

15   engage in any substantial gainful activity by reason of any medically determinable

16   physical or mental impairment which can be expected to result in death or which

17   has lasted or can be expected to last for a continuous period of not less than twelve

18   months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

19   impairment must be "of such severity that he is not only unable to do his previous

20   work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 31, 2012, the alleged onset date.  Tr. 104.  At step two, the ALJ found Plaintiff has the following severe impairments: blindness in left eye; affective disorder; anxiety disorder; and substance addiction disorder.  Tr. 104.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 105.  The ALJ then found Plaintiff has the residual functional capacity to perform medium work:

> except he has no sitting, standing, or walking limitations; cannot climb ladders, ropes or scaffolds; cannot work at unprotected heights; cannot operate heavy machinery or equipment; cannot work on uneven surfaces; cannot drive at night (due to no vision in the left eye); can perform simple, repetitive, up-to-3-step tasks with no detailed work; can have occasional contact with co-workers and superficial contact with the general public; and can perform only ordinary production requirements.

Tr. 106.

At step four, the ALJ found Plaintiff is able to perform past relevant work as a janitor.  Tr. 112.  Alternatively, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 112.  Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 31, 2012, through the date of the decision.  Tr. 113.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability benefits under Title II and supplemental security income benefits under

Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims;

2. Whether the ALJ failed to properly consider the medical opinion evidence; and

3. Whether the ALJ had a duty to supplement the record.

ECF No. 13 at 9-19.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ improperly rejected his symptom claims. ECF No. 13 at 9-14. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.  Tr. 107.

First, the ALJ found the medical evidence does not substantiate the alleged degree of Plaintiff's physical pain.  Tr. 108.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen,* 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2),

416.929(c)(2) (2011)[1]; *see also* S.S.R. 96-7p.[2]  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ observed that Dr. Michels, the treating surgeon, found in January 2013 that Plaintiff's eye socket had "healed well," the margin of the left lower lid was "excellent" and with "good position," and there were no signs of breakdown within the socket.  Tr. 108, 290.  Dr. Michels noted, "My impression is that this patient has done well after an extensive orbital surgery with a left lower lid reconstruction."  Tr. 108, 290.  In March 2014, after complaints of eye socket pain,

---

[1] Some of the regulations cited in this decision were revised effective March 17, 2017.  E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404.1529).  Since the revisions were not effective at the time of the ALJ's decision, they does not apply to this case.  For revised regulations, the version effective at the time of the ALJ's decision is noted.

[2] S.S.R. 96-7p was superseded by S.S.R. 16-3p for decisions made on or after March 28, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms.  S.S.R. 16-3p at *6.

Dr. Michels found the anterior segment exam was normal, the lid contour was excellent, the eye socket had healed nicely, and there were no signs of breakdown or infection. Tr. 108, 348. Dr. Michels wrote, "I cannot explain why he has persistent socket pain." Tr. 108, 348. The ALJ reasonably determined that the objective evidence does not support the disabling pain alleged by Plaintiff. Tr. 108.

Second, the ALJ found that Plaintiff's pain has been well-controlled with medication. Tr. 108. An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted that Plaintiff has repeatedly sought pain medications and his pain has been well-controlled by them, and that there is evidence of possible misuse of narcotic medication which would further undermine Plaintiff's pain complaints. Tr. 108. The ALJ described the chronology of Plaintiff's treatment with pain medication, noting Plaintiff reporting improvement and doing well on medication in January, February, and March 2013. Tr. 108, 290, 304, 306-07. After Dr. Schaaf left the clinic in mid-2013, Plaintiff was agitated at suggestions of other providers that his pain medication be tapered and sought a referral to a pain clinic. Tr. 108, 315, 317, 339-40, 344, 347-49. He landed at Spokane Pain Center in January 2014 where he was put on a pain contract and told the provider that his old clinic "would not stand by the [pain] contract he had after

his provider left the clinic." Tr. 109, 324. In March 2015, he reported that his pain medication improved functioning and that he rated his functioning at 10/10 while on medication.[3] Tr. 109, 330. Plaintiff testified that he cannot work because his pain comes and goes and he does not want to take his medications as prescribed because he does not want to become addicted to them. Tr. 42, 108. The ALJ reasonably determined that Plaintiff's testimony is undermined by the evidence that pain medication improves his function.[4] Tr. 108.

--------------------

[3] Plaintiff asserts the ALJ "mischaracterizes the record" and that "there is no evidence that [Plaintiff] has achieved consistent pain control." ECF No. 13 at 11. The evidence cited by the ALJ is sufficient to support the ALJ's findings; Plaintiff cites no evidencing indicating the contrary. ECF No. 13 at 11.

[4] The ALJ also found the evidence suggests the possible misuse of narcotic medications which would undermine the credibility of Plaintiff's pain complaints. Tr. 108. This is based on one record indicating a pill count was less than expected and Plaintiff admitted slightly overusing Dilaudid, but the provider noted that Plaintiff received fewer tablets than prescribed. Tr. 109, 331-32. Defendant concedes the ALJ's finding is not supported by substantial evidence. ECF No. 14 at 3. However, because the ALJ cited numerous other reasons supporting the ALJ's assessment of Plaintiff's symptom claims, any error is harmless. *See*

1    Third, the ALJ found Plaintiff's credibility is undermined by inconsistent

2    reports of alcohol use.  Tr. 109.  Conflicting or inconsistent testimony concerning

3    alcohol or drug use can contribute to an adverse credibility finding.  *Thomas*, 278

4    F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ

5    noted that Plaintiff testified he had not had alcohol since his accident in October

6    2012, and that a record indicating that he drinks is "wrong."  Tr. 40, 109.

7    However, during a psychological evaluation in July 2013, Plaintiff told Dr.

8    Thompson he drinks alcohol "once in a 'great while'" and reported that he last

9    drank two to three weeks prior to the evaluation.  Tr. 109, 321.  In March 2014, Dr.

10   Michels noted that Plaintiff reported he "consumes alcohol moderately."  Tr. 347.

11   The ALJ found that because there is evidence from two different sources,

12   Plaintiff's testimony that records indicating he drinks are wrong is not credible.

13

14

15

16   _____

17   *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008);

18   *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson*

19   *v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

20

Tr. 109.  This is a reasonable interpretation of the evidence and this is a clear and convincing reason supported by substantial evidence.[5]

Fourth, the ALJ found Plaintiff's activities of daily living indicate he is capable of work as limited by the RFC.  Tr. 109.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair*, 885 F.2d at 603.  Furthermore, "Even

_____

[5] Plaintiff cites S.S.R. 16-3p to suggest the ALJ improperly considered Plaintiff's inconsistent reports of alcohol use.  ECF No. 13 at 12.  As noted *supra*, S.S.R. 16-3p does not apply to decisions made before March 28, 2016.  Even if it did apply, the ALJ appropriately considered Plaintiff's inconsistent reporting about alcohol use in assessing Plaintiff's pain testimony in light of Plaintiff's lack of cooperation with Dr. Thompson's psychological evaluation and her conclusions therein.  *See infra*.

where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ found that Plaintiff's daily activities indicate that he is "quite functional" and can perform medium level work with mental and social limitations. Tr. 109. The ALJ noted that while Plaintiff testified that his mother did the laundry, shopped for groceries, cooked, and took care of his nine-year-old daughter, Tr. 35, 37, 41, he reported in May 2013 that he typically gets up, gets his daughter ready for school, takes her to school, cleans the house, waits for his daughter to get home from school, and accompanies her as she plays in or out of the house. Tr. 109, 200. He wrote, "I take care of my child as a parent." Tr. 200. He also reported making sandwiches and dinner for his child, cleaning and doing laundry (but not yard work due to vision and pressure), shopping, handling money, going to church, and playing games with family. Tr. 109, 201-03. The ALJ noted that Plaintiff testified that his eye pain causes difficulty concentrating and he alleged limitations due to depression and anxiety, but he wrote in May 2013 that he can always pay attention, that he finishes what he starts, that he follows both written and spoken instructions well, that he gets along with everyone, that he handles stress well, and that he is able to handle changes in life or routine. Tr. 33, 36, 109, 204-05. Although Plaintiff

1  testified he does not drive due to vision issues, he is able to go out by using public

2  transportation or by getting rides.  Tr. 40, 109, 202.

3      Without citing the record, Plaintiff suggests that the inconsistency cited by the

4  ALJ between Plaintiff's 2015 testimony and his 2013 report is attributable to

5  Plaintiff's adjustment to his loss of vision and that "his perception of his ability has

6  changed to a more realistic day-to-day appreciation for the activities he can

7  ultimately consistently and safely perform."  ECF No. 13 at 13.  There is no support

8  for this assertion in the record and, even if it could reasonably be inferred from the

9  evidence, the ALJ's interpretation of the evidence is also reasonable.  The court must

10  uphold the ALJ's decision where the evidence is susceptible to more than one

11  rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

12  This is a clear and convincing reason supported by substantial evidence.

13      Fifth, the ALJ identified inconsistencies between Plaintiff's allegations and

14  the treatment record.  Tr. 109.  Contradiction with the medical record is a sufficient

15  basis for rejecting the claimant's subjective testimony.  *Carmickle v. Comm'r of Soc.*

16  *Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428,

17  1434 (9th Cir.1995).  The ALJ observed that despite Plaintiff's allegation that he has

18  difficulty navigating unfamiliar stairs, Plaintiff does not use any assistive device

19  such as a cane.  Tr. 38, 109, 205.  Plaintiff faults the ALJ for this finding because

20  "there is no evidence that a cane has been prescribed or even suggested by any

source," ECF No. 13 at 13, which is exactly the ALJ's point. The ALJ also noted that despite testifying that bending over causes pain, Plaintiff did not indicate issues with bending in his function report or to any medical provider. Tr. 36, 109-10, 204. The ALJ reasonably concluded that these findings undermine Plaintiff's complaints about difficulty with these postural activities. Tr. 110.

Plaintiff contends that his lack of an assistive device does not mean "that his eye impairment did not impose any functional limitations whatsoever." ECF No. 13 at 13. Plaintiff's argument ignores a number of limitations included in the RFC resulting from Plaintiff's loss of vision, including limitations on climbing ladders, ropes, or scaffolds, working at unprotected heights, operating heavy machinery or equipment, working on uneven surfaces, and driving at night. Tr. 106. The ALJ reasonably took into account Plaintiff's lack of assistive device and lack of complaints to medical providers in evaluating his testimony about difficulty navigating stairs or ambulating.

Sixth, the ALJ found there is little evidence of treatment for Plaintiff's anxiety and depression which suggests they are not as severe as alleged. Tr. 110. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (2011). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. In some cases,

however, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ noted Plaintiff's history of mental health treatment which consists of medication for depression, anxiety and panic attacks. Tr. 110. In November 2012, Plaintiff complained of panic attacks but mostly needed help sleeping and was prescribed Xanax. Tr. 303. In December 2012, alprazolam was working for anxiety. Tr. 304. In March 2013, Plaintiff was satisfied with Xanax but wanted something other than Celexa for depression. Tr. 307. He was noted to be alert and pleasant with a normal mood and affect, and his antidepressant was changed. Tr. 307. In May 2013, Plaintiff complained that Prozac was not resolving his depression. Tr. 310. Although he feels better after he talks with someone, he was not interested in seeing a counselor ("he has been there and done that without good results"). Tr. 310. He was alert and pleasant with a depressed affect and was able to communicate without deficits. Tr. 311. In July 2013, Plaintiff refused to follow up with counseling and was again advised to seek counseling. Tr. 315, 317. His Xanax was decreased. Tr. 317-18. One month later, Plaintiff was alert and

pleasant with normal mood and affect and his Xanax was reduced. Tr. 339. In May 2014, he reported panic attacks and fluoxetine and alprazolam were prescribed, and on exam no unusual anxiety or evidence of depression were noted. Tr. 344. Overall, the ALJ found that Plaintiff's anxiety and depression symptoms do not preclude him from performing work with the limitations assessed in the RFC. Tr. 110. This is a clear and convincing reason supported by substantial evidence.

Plaintiff contends the ALJ inaccurately reported the record by saying there was "little evidence of treatment for anxiety and depression," Tr. 110, since "[t]here have been mental impairment symptoms noted throughout the record. ECF No. 13 at 13 (citing Tr. 303-07, 310, 312, 315, 317, 320, 322, 325, 336, 340, 347). However, the ALJ did not deny or overlook Plaintiff's mental health symptoms. Tr. 110. In fact, the ALJ included mental health limitations in the RFC, Tr. 106, despite the opinions of the reviewing psychologists, Dr. Kraft and Dr. Regets, that Plaintiff does not have a severe impairment, and the opinion of the medical expert, Dr. Moore, that Plaintiff probably does not have a medically determinable mental impairment other than substance abuse. Tr. 25, 56-57, 80-81, 105. Based on the foregoing, the ALJ properly considered the mental health treatment evidence.

Seventh, the ALJ found Plaintiff's lack of cooperation during a psychological exam suggests ongoing substance abuse and is inconsistent with his allegations of disability. Tr. 110. In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In July 2013, Renee Thompson, Psy.D, conducted a consultative psychological exam. Tr. 320-23. The ALJ noted Plaintiff reported at the evaluation for the first time that he was unable to work because of mental health issues. Tr. 110, 320. He said his anxiety and depression affected his typical daily functioning, that he could do chores, and then said he did not understand the questions being asked. Tr. 110, 320. Plaintiff left the interview before it was complete. Tr. 111, 322. Before he left, Dr. Thompson was able to determine that Plaintiff was oriented to person, place, and time, and was able to state what he had for dinner and activities he performed the previous night. Tr. 111, 322. He repeated three out of three unrelated words immediately but did not complete any other mental status exam tasks. Tr. 111, 322. Dr. Thompson noted that Plaintiff's behavior was erratic or hostile and his responses were bizarre, evasive, or inconsistent. Tr. 111, 322. She noted several possible reasons for Plaintiff's behavior, including pain severe enough to alter his presentation, a cerebral incident, he could be under the influence of a substance, or he could be managing his presentation to appear impaired. Tr. 111, 322-23. Dr. Thompson indicated

Plaintiff denied using substances but that his presentation was consistent with substance use. Tr. 111, 322. The ALJ reasonably determined that Plaintiff's refusal to cooperative with Dr. Thompson suggests substance abuse and is a clear and convincing reason for the credibility determination. Tr. 110.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the medical opinion Karen Schaaf, M.D., a treating physician. ECF No. 13 at 14-17. In February 2013, Dr. Schaaf completed a "Documentation Request for Medical or Disability Condition" form and noted Plaintiff's only condition is an absent left eye. Tr. 359-61. Dr. Schaaf indicated Plaintiff's ability to work is limited because he is unable to see in the left visual field, and that he is limited to 1-10 hours per week to work, look for work, or prepare for work. Tr. 359. Dr. Schaaf opined that Plaintiff has limitations on lifting and carrying for safety, but did not indicate a specific weight limit. Tr. 360. According to Dr. Schaaf, Plaintiff's compromised vision impairs his ability to access services. Tr. 360.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31 (9th Cir. 1995)).

The ALJ gave great weight to the lifting and carrying restriction suggested by Dr. Schaaf. Tr. 111. Although Dr. Schaaf did not specify a weight limit, the ALJ found safety reasons support a finding of a lifting and carrying restriction

consistent with medium work, and gave no weight to the opinion of Dr. Virji, the reviewing physician, that Plaintiff has no lifting or carrying limitations. Tr. 111. The ALJ gave little weight to Dr. Schaaf's opinion that Plaintiff is limited to ten hours of work per week and to the implication that Plaintiff is unable to work. Tr. 111. Because Dr. Schaaf's opinion assessing a limitation on the hours Plaintiff can work was contradicted by the opinion of Dr. Virji, Tr. 82-84, the ALJ was required to provide specific and legitimate reasons for rejecting that portion of Dr. Schaaf's opinion.[6] *Bayliss*, 427 F.3d at 1216.

---

[6] Plaintiff asserts, "[e]vidently someone at the Appeals Council detached SSR 96-2p from [Plaintiff's appeal] brief" and this reflects "bad faith on the part of someone at the Appeals Council." Plaintiff contends "[t]his ruling is important and was intentionally attached to plaintiff's brief to ensure that the United States District Court was aware that there is a Social Security Ruling 96-2p that requires controlling weight to be given to the treating source medical opinions." ECF No. 13 at 17. Notwithstanding that there is no basis in the record for an inference of "bad faith" by "someone at the Appeals Council," the Court has no jurisdiction over the Appeals Council decision when review is denied. *Sims v. Apfel*, 530 U.S. 103, 106 (2000); *Osenbrock v. Apfel*, 240 F.3d 1157, 1160 (9th Cir. 2001); *McCarthy v. Apfel*, 221 F.3d 1119, 1122 (9th Cir. 2000). Moreover, citation is

First, the ALJ found that Dr. Schaaf's assessment of limitations is not consistent with the overall medical evidence of record. Tr. 111. An ALJ may discredit a treating physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As discussed *supra*, the ALJ found the medical evidence indicates Plaintiff's eye socket healed well and Dr. Michels, the treating specialist, could not explain why Plaintiff had eye socket pain. Tr. 108, 111, 290, 348. Plaintiff notes no evidence in the record consistent with Dr. Schaaf's finding that Plaintiff should be limited to 1-10 hours of work per week. This is a specific, legitimate reason for rejecting Dr. Schaaf's assessment that Plaintiff should be limited to less than 10 hours per week of work.

Second, the ALJ found that Dr. Schaaf's assessment is not consistent with the fact that Plaintiff has had significant improvement in functioning with pain medication. Tr. 111. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*,

_____

sufficient to ensure the Court is aware of any relevant ruling and an attached copy is not expected or needed. Additionally, the controlling weight provision of S.S.R. 96-2p does not apply here because the findings in Dr. Schaaf's opinion rejected by the ALJ are contradicted by Dr. Virji's opinion.

504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ found that to the extent Plaintiff has continuing pain, his functioning improved significantly with medication. Tr. 111. Indeed, in March 2015, Plaintiff reported medication improved his overall functioning, his mood, his walking ability, his ability to work or perform household chores, his ability to interact socially, his ability to sleep, and his enjoyment of life, and rated his functioning at 10/10 with pain medication. Tr. 330. As discussed *supra*, the ALJ's inferences and findings regarding pain medication are supported by substantial evidence. Thus, the ALJ reasonably determined that Dr. Schaaf's assessment that Plaintiff's ability to work is very limited is inconsistent with the medication evidence. This is a specific, legitimate reason for rejecting that portion of Dr. Schaaf's opinion.

Third, the ALJ found that Dr. Schaaf's assessment of limitations is inconsistent with Plaintiff's activities of daily living. Tr. 111. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999). The ALJ found that Plaintiff's daily activities indicate that he is "quite functional" as he reported he gets his daughter ready and takes her to school, cleans, makes dinner, does laundry, goes shopping, goes to church, and plays games with family. Tr. 109, 200-03. Although Plaintiff does not drive because of

his vision issues, he uses public transportation or gets rides to go places.  Tr. 40, 109, 202.  The ALJ reasonably determined Plaintiff's activities of daily living are not significantly limited which is inconsistent with Dr. Schaaf's finding that Plaintiff is limited to a maximum of 10 hours per week.[7]  Tr. 111.

**C.     Duty to Develop the Record**

Plaintiff contends the ALJ should have developed the record regarding Plaintiff's mental health complaints.  ECF No. 14 at 13.  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also* 20 C.F.R. §§ 404.1519a, 416.919a.  Ambiguous evidence,

---

[7] Plaintiff contends the ALJ failed to specifically discuss his activities of daily living.  ECF No. 13 at 16.  The Court concludes the ALJ's discussion of the daily activities evidence is sufficient.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues that Dr. Moore testified Dr. Thompson's consultative exam was over two years old, "raised more questions than answers," and indicated another psychological evaluation should probably be obtained. ECF No. 13 at 14 (citing Tr. 25). An ALJ has broad latitude in ordering a consultative examination. *Reed v. Massanari,* 270 F.3d 838, 842 (9th Cir. 2001). A consultative exam may be purchased to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to make a determination. 20 C.F.R. §§ 404.1519a, 416.919a. However, failing or refusing to take part in a consultative exam may result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1518(a), 416.918(a) (1994). Furthermore, the ALJ may make inferences "logically flowing from the evidence." *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir.1996).

Here, Plaintiff's own behavior thwarted Dr. Thompson's ability to complete the psychological exam. Although Plaintiff argues the ALJ "fails to explore or even consider the distinct possibility that [Plaintiff]'s actions were directly related

to mental impairment issues," ECF No. 13 at 14, the ALJ in fact mentioned that Dr. Thompson "noted several possible reasons, including that his pain level could be severe enough to alter his presentation; that he could have experienced a cerebral incident; or that he could be under the influence of the substance." Tr. 111 (citing Tr. 322). However, the ALJ also noted that Dr. Thompson opined that Plaintiff's presentation was "consistent with substance use: understanding simple questions seems effortful for him, he does not answer questions or provides inadequate information, and seems to have some difficulty with language use." Tr. 111, 322-23.

Based on the foregoing, the ALJ reasonably determined that Plaintiff's refusal to cooperate with Dr. Thompson's exam is consistent with substance use and the psychological limitations in the RFC. Plaintiff has offered no basis supported by the record for an alternative finding. Plaintiff bears the burden to produce medical evidence supporting the disability claim. *Tackett*, 180 F.3d at 1098; 20 C.F.R. §§ 404.1512(a), 416.912(a) (2015). To the extent the evidence could have been interpreted differently, the ALJ's finding is based on substantial evidence. When the evidence is subject to more than one rational conclusion, we must defer to the ALJ's conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995.). Thus, there is no ambiguity in the evidence requiring further development of the record.

# CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. To the extent the evidence could be interpreted more favorably to Plaintiff, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes*, 881 F.2d at 750. In this case, the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence in the record. Therefore, the ALJ's decision is affirmed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is GRANTED.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED August 14, 2018.

<u>s/*Fred Van Sickle*</u>
Fred Van Sickle
Senior United States District Judge